·FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2023 APR -5  PM 1: 05

OFFICE OF THE CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FANNIE MAE,                        §
                                   §
    Plaintiff          §
                                   §
v.                                 §
                                   §        Civil Action No. 1:23-cv-00862-JMC
AMELIA AID PROPCO LLC, *et al.*,   §
                                   §           8:23mc132
    Defendants.        §

### AGREED ORDER APPOINTING RECEIVER

Before the Court is Plaintiff Fannie Mae's *Emergency Application for Appointment of Receiver* (the "***Application***") against each of above-captioned defendants (each a "***Defendant***" or "***Borrower***", and collectively, the "***Defendants***" or "***Borrowers***"). All capitalized terms not defined in this Order have the meanings ascribed to them in the Application.

By its Application, and in order to facilitate the transition of ownership and operations, Fannie Mae seeks the appointment of a receiver to enter upon and take exclusive power, authority, and control over the assets, management, operations, maintenance, leasing, repair, and preservation of the following properties, both real and personal, including the operations of the senior housing communities situated on such properties, except as set forth herein (as fully defined in the Application, each a "***Property***" and collectively the "***Properties***"):

    a.  The following Properties are referred to collectively herein as the "***MCFA 54 Properties***", and the corresponding Property Owners/Defendants are referred to collectively herein as the "***MCFA 54 Defendants***".

| Property Name | Property Address | Property Owner/Defendant |
|---|---|---|
| Amelia Place | 57 W. Ferndale Drive, Council Bluffs, IA 51503 | Amelia AID Propco LLC |
| Ashley Place | 526 Haltiwanger Road, Greenwood, SC 29649 | Ashley AID Propco LLC |
| Garden Way Place | 2400 Garden Way, Hermitage, PA 16148 | Bentley AID Propco LLC |

| Property Name | Property Address | Property Owner/Defendant |
|---|---|---|
| Bliss Place | 3008 Shawnee Drive S., Bedford, IN 47421 | Bliss AID Propco LLC |
| Blanchard Place | 825 Richard Lane, Kenton, OH 43326 | Blanchard AID Propco LLC |
| Bowman Place | 1215 Elm Street, Three Rivers, MI 49093 | Bowman AID Propco LLC |
| Bradfield Place | 3700 Oates Drive, Mesquite, TX 75150 | Bradfield AID Propco LLC |
| Brook Gardens Place | 300 O'Neil Street, Lake Mills, WI 53551 | Brook Gardens AID Propco LLC |
| Carlisle Place | 1721 Whetstone Street, Bucyrus, OH 44820 | Carlisle AID Propco LLC |
| Chisholm Place | 1450 E. North 10th Street, Abilene, TX 79601 | Chisholm AID Propco LLC |
| Christina Place | 1435 Christian Boulevard, Franklin, IN 46131 | Christina AID Propco LLC |
| Conner Place | 2 Cottonwood Lane, Canyon, TX 79015 | Conner AID Propco LLC |
| Cottonwood Place | 3271 29th Avenue, Columbus, NE 68601 | Cottonwood AID Propco LLC |
| Cypress Place | 205 Midland Parkway, Summerville, SC 29485 | Cypress AID Propco LLC |
| Emerald Place | 297 S. 100 E., Washington, IN 47501 | Emerald AID Propco LLC |
| Greene Place | 600 Church Street, Seward, NE 68434 | Greene AID Propco LLC |
| Clen-Moore Place | 22 W. Clen Moore Boulevard, New Castle, PA 16105 | Greer AID Propco LLC |
| Hammond Place | 128 Walnut Lane, North Augusta, SC 29860 | Hammond AID Propco LLC |
| Helena Place | 1624 Paris Avenue, Port Royal, SC 29935 | Helena AID Propco LLC |
| Hickory Place | 717 S. Alamo Road, Levelland, TX 79336 | Hickory AID Propco LLC |
| Highlands Place | 225 Norfleet Drive, Somerset, KY 42501 | Highlands AID Propco LLC |
| Hitchcock Place | 102 Crepe Myrtle Drive, Aiken, SC 29803 | Hitchcock AID Propco LLC |
| Keowee Place | 475 Rochester Highway, Seneca, SC 29672 | Inn at Seneca AID Propco LLC |
| Kingsbury Place | 245 W. Rosewood Avenue, Defiance, OH 43512 | Kingsbury AID Propco LLC |

| Property Name | Property Address | Property Owner/Defendant |
|---|---|---|
| Lake View Place | 545 Luco Road, Fond Du Lac, WI 54935 | Lake View AID Propco LLC |
| Langston Place | 127 Springdale Drive, Clinton, SC 29325 | Langston AID Propco LLC |
| Logan Place | 180 Craigdell Road, New Kensington, PA 15068 | Logan AID Propco LLC |
| Louisa Place | 2240 Main Street, Ferndale, WA 98248 | Louisa AID Propco LLC |
| Lowrie Place | 100 Stirling Village, Butler, PA 16001 | Lowrie AID Propco LLC |
| Mackenzie Place | 8609 Boston Avenue, Lubbock, TX 79423 | Mackenzie AID Propco LLC |
| Manning Place | 10 Companion Court, Greer, SC 29651 | Manning AID Propco LLC |
| Marquis Gardens Place | 660 Cherry Tree Lane, Uniontown, PA 15401 | Marquis AID Propco LLC |
| McCullough Place | 500 Cheney Oak Drive, Johnston, PA 15905 | McCullough AID Propco LLC |
| McKinney Place | 3901 High Street, Logansport, IN 46947 | McKinney AID Propco LLC |
| Mercer Place | 5701 Dexham Road, Rowlett, TX 75089 | Mercer AID Propco LLC |
| Meredith Place | 812 W. 25th Avenue, Pampa, TX 79065 | Meredith AID Propco LLC |
| Somers Place | 199 Steelmanville Road, Egg Harbor Township, NJ 08234 | Mey AID Propco LLC |
| Miller Place | 1506 Meadowview Drive, Celina, OH 45822 | Miller AID Propco LLC |
| Monroe Place | 2770 S. Adams Street, Bloomington, IN 47403 | Monroe AID Propco LLC |
| Moorehead Place | 116 Madison Circle, Indiana, PA 15701 | Moorehead AID Propco LLC |
| Morton Place | 1500 14th Avenue, Nebraska City, NE 68410 | Morton AID Propco LLC |
| River Woods Place | 950 S. Rapids Road, Manitowoc, WI 54220 | River Wood AID Propco LLC |
| North Woods Place | 501 S. Lincoln Road, Escanaba, MI 49829 | North Woods AID Propco LLC |
| Oakley Place | 1275 Northview Drive, Greenville, OH 45331 | Oakley AID Propco LLC |
| Pathfinder Place | 3010 N. Clarkson Street, Fremont, NE 68025 | Pathfinder AID Propco LLC |

| Property Name | Property Address | Property Owner/Defendant |
|---|---|---|
| Pinewood Place | 101 Centennial Boulevard, Goose Creek, SC 29445 | Pinewood AID Propco LLC |
| Santa Fe Place | 3404 SW 5th Street, Plainview, TX 79072 | Santa Fe AID Propco LLC |
| Sojourner Place | 5364 Green Meadow Drive, Kalamazoo, MI 49009 | Sojourner AID Propco LLC |
| Woodbourne Place | 2619 Trenton Road, Levittown, PA 19056 | Stateman Woods AID Propco LLC |
| Terrace Place | 1231 Eisner Avenue, Sheboygan, WI 53083 | Terrace AID Propco LLC |
| Bell Gardens Place | 251 Harry Sauner Road, Hillsboro, OH 45133 | Highland AID Propco LLC |
| Wheeler Place | 2310 E. Broadway Street, Gainesville, TX 76240 | Wheeler AID Propco LLC |
| Wissota Place | 2801 County Highway I, Chippewa Falls, WI 54729 | Wissota AID Propco LLC |
| York Place | 725 W. 50th Street, Marion, IN 46953 | York AID Propco LLC |

b.  The following Properties are referred to collectively herein as the "*MCFA 25 Properties*", and the corresponding Property Owners/Defendants are referred to collectively herein as the "*MCFA 25 Defendants*".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Aurora Place | 675 W. Broadway Avenue, Apache Junction, AZ 85120 | Aurora AID Propco LLC |
| Jasmine Place | 3076 Shoshone Drive, Lake Havasu City, AZ 86406 | Jasmine AID Propco LLC |
| Dalton Place | 1300 W. Waugh Street, Dalton, GA 30720 | Peachtree Estates AID Propco LLC |
| Northstar Place | 3250 Quick Water Landing NW, Kennesaw, GA 30144 | Sanctuary at Northstar AID Propco LLC |
| Seven Hills Place | 279 Technology Parkway, Rome, GA 30165 | Rome AID Propco LLC |
| Floyd Place | 403 C. Street, Sergeant Bluff, IA 51054 | Floyd AID Propco LLC |
| Pinicon Place | 1615 Breca Ridge Drive, Anamosa, IA 52205 | Anamosa AID Propco LLC |
| Garnet Place | 5815 Coffey Street, Garden City, ID 83714 | Rosewind AID Propco LLC |

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Heron Place | 715 W. Comstock Avenue, Nampa, ID 83651 | Heron AID Propco LLC |
| Syringa Place | 1880 Harrison Street N., Twin Falls, ID 83301 | Chaparelle AID Propco LLC |
| Hamilton Place | 2116 Butler Road, Fort Wayne, IN 46808 | Hamilton AID Propco LLC |
| Lake City Place | 425 Chinworth Court, Warsaw, IN 46580 | Gardens at Lake AID Propco LLC |
| Lynd Place | 2410 E. McGalliard Road, Muncie, IN 47303 | Lynd AID Propco LLC |
| Seymour Place | 2288 Nicholas Court, Seymour, IN 47274 | Shields AID Propco LLC |
| Marigold Place | 5723 Jackson Street Ext., Alexandria, LA 71303 | Marigold AID Propco LLC |
| Lindsay Place | 39 Supawna Road, Pennsville, NJ 08070 | Lindsay AID Propco LLC |
| Broadmoor Place | 2601 E. Villa Maria Road, Bryan, TX 77802 | Millican AID Propco LLC |
| Grayson Place | 3001 W. Crawford Street, Denison, TX 75020 | Katy AID Propco LLC |
| Hoyt Place | 1700 Hoyt Street, Sweetwater, TX 79556 | Hoyt AID Propco LLC |
| Lakewell Place | 3005 NE 2nd Street, Mineral Wells, TX 76067 | Lakewell AID Propco LLC |
| Rose Place | 8214 Anchor Drive, Port Arthur, TX 77642 | Rose AID Propco LLC |
| Winkler Place | 513 N. Adams Street, Carthage, TX 75633 | Winkler AID Propco LLC |
| Wren Place | 814 Woodard Avenue, Cleburne, TX 76033 | Wren AID Propco LLC |
| Blossom Place | 5100 W. Nob Hill Boulevard, Yakima, WA 98908 | Blossom AID Propco LLC |
| Meadows Place | 1008 E. Mountain View Avenue, Ellensburg, WA 98926 | Mountain View Meadows AID Propco LLC |

    c. The following Properties are referred to collectively herein as the "*MCFA 11 Properties*", and the corresponding Property Owners/Defendants are referred to collectively herein as the "*MCFA 11 Defendants*".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Copper Place | 12234 E. North Frontage Road, Yuma, AZ 85367 | Copper Hills AID Propco LLC |
| Powell Place | 806 W. Longhorn Road, Payson, AZ 85541 | Powell AID Propco LLC |
| Eiler Place | 920 W. Garfield Street, Clarinda, IA 51632 | Eiler AID Propco LLC |
| Swan Place | 1024 E. 12th Street, Carroll, IA 51401 | Swan AID Propco LLC |
| Masonville Place | 150 Northshore Drive, Coldwater, MI 49036 | Masonville AID Propco LLC |
| Clyde Gardens | 700 Coulson Street, Clyde, OH 43410 | Gardens at Clyde AID Propco LLC |
| Strake Place | 1701 Westview Boulevard, Conroe, TX 77304 | Strake AID Propco LLC |
| Franklin Place | 5713 Parker Road East, Sumner, WA 98390 | Franklin AID Propco LLC |
| Windriver Place | 7310 North Pine Rock Street, Spokane, WA 99208 | Windriver AID Propco LLC |
| McKinley Place | W56 N225 McKinley Boulevard, Cedarburg, WI 53012 | Cedar Gardens AID Propco LLC |
| Menomonee Place | N84 W17147 Menomonee Place, Menomonee Falls, WI 53051 | Tamarack AID Propco LLC |

    d.  The following Properties are referred to collectively herein as the "***Bluegrass Properties***", and the corresponding Property Owners/Defendants are referred to collectively herein as the "***Bluegrass Defendants***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Trail Creek Place (ASL) | 1400 E. Coolspring Avenue, Michigan City, Indiana 46360 | Michigan City 1400 AL BG Propco LLC |
| Trail Creek Place (MC) | 1300 E. Coolspring Avenue, Michigan City, Indiana 46360 | Michigan 1300 MC BG Propco LLC |
| Willow Lake Place | 2725 Lake Circle Drive, Indianapolis, Indiana 46268 | Indianapolis 2725 Lake BG Propco LLC |
| Richland Place | 3823 Lawndale Drive, Greensboro, North Carolina 27455 | Greensboro BG Propco LLC |

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Canfield Place | 2300 Canfield Road, Youngstown, Ohio 44511 | Youngstown BG Propco LLC |
| Fairfield Place | 2357 Mack Road, Fairfield, Ohio 45014 | Fairfield BG Propco LLC |
| Mansfield Place | 1841 Middle Bellville Road, Mansfield, Ohio 44904 | Mansfield BG Propco LLC |
| Urbana Place | 609 E. Water Street, Urbana, Ohio 43078 | Urbana BG Propco LLC |
| Deane Hill Place | 401 Catherine McAuley Way, Knoxville, Tennessee 37919 | Knoxville BG Propco LLC |
| Dewitt Place | 2131 Walters Drive, Morristown, Tennessee 37814 | Morristown BG Propco LLC |
| Foothills Place | 3071 N. Swan Road, Tucson, Arizona 85712 | Tucson BG Propco LLC |
| Hunters Crossing Place (ASL) | 4601 NW 53rd Avenue, Gainesville, Florida 32653 | Gainesville 4601 AL BG Propco LLC |
| Lehigh Acres Place | 1251 Business Way, Lehigh Acres, Florida 33936 | Lehigh Acres BG Propco LLC |
| Wayman Place | 342 S. Wayman Street, Longwood, Florida 32750 | Longwood BG Propco LLC |
| Abilene Place North & Abilene Place South | 1100 & 1102 N. Vine Street, Abilene, Kansas 67410 | Abilene 1100 East BG Propco LLC & Abilene 1102 West BG Propco LLC |
| Blue Ridge Place | 615 W. Blueridge Drive, Midwest City, Oklahoma 73110 | Midwest City BG Propco LLC |
| Dorset Place (ASL) & Dorset Place (MC) | 2435 NW 122nd Street, Oklahoma City, Oklahoma 73120 & 12401 Dorset Drive, Oklahoma City, Oklahoma 73120 | OKC 2435 122ND BG Propco LLC |
| Northhaven Place | 7535 Hefner Road, Oklahoma City, Oklahoma 73162 | OKC 7535 Hefner BG Propco LLC |
| Southridge Place | 2500 SW 89th Street, Oklahoma City, Oklahoma 73159 | OKC 2500 89TH BG Propco LLC |
| Ten Oaks Place | 3610 SE Huntington Circle, Lawton, Oklahoma 73501 | Lawton BG Propco LLC |
| Dublin Place | 504 Firetower Road, Dublin, Georgia 31021 | Dublin BG Propco LLC |
| Kennesaw Place | 2800 Jiles Road NW, Kennesaw, Georgia 30144 | Kennesaw BG Propco LLC |

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Virginia Place | 8253 Virginia Street, Merrillville, Indiana 46410 | Merrillville BG Propco LLC |
| Park Creek Place (MC) & Park Creek Place (PC) | 1089 Horsham Road & 1091 Horsham Road, North Wales, Pennsylvania 19454 | North Wales BG Propco LLC |
| Athens Place | 120 Keith Lane, Athens, Tennessee 37303 | Athens BG Propco LLC |
| Bright Leaf Place | 432 Hermitage Drive, Danville, Virginia 24541 | Danville BG Propco LLC |
| Cave Spring Place | 3585 Brambleton Avenue, Roanoke, Virginia 24018 | Roanoke BG Propco LLC |
| Cherryvale Place | 1545 Temple Lane, Rockford, Illinois 61112 | Rockford BG Propco LLC |
| Rock Run Place (MC) | 3315 Executive Drive, Joliet, Illinois 60431 | Joliet 3315 MC BG Propco LLC |
| Kesslerwood Place | 5011 Kessler Boulevard East Drive, Indianapolis, Indiana 46220 | Indianapolis 5011 State BG Propco LLC |

e.  The following Property is referred to herein as the "***Hopkins Property***", and Hopkins AID Propco LLC is referred to herein as ("***Hopkins***").

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Hopkins Place | 890 Camp Street, Sulphur Springs, TX 75482 | Hopkins AID Propco LLC |

f.  The following Property is referred to herein as the "***Westwood Property***", and Westwood Landing AID Propco LLC is referred to herein as "***Westwood***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Westwood Place | 37950 Airport Road, Woodsfield, OH 43793 | Westwood Landing AID Propco LLC |

g.  The following Property is referred to herein as the "***Bluebonnet Property***", and Bluebonnet AID Propco LLC is referred to herein as ("***Bluebonnet***").

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Bluebonnet Place | 3601 Victoria Avenue, College Station, TX 77845 | Bluebonnet AID Propco LLC |

h. The following Property is referred to herein as the "***Lucas Property***", and Lucas AID Propco LLC is referred to herein as "***Lucas***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Lucas Place | 2910 Toccoa Road, Beaumont, TX 77703 | Lucas AID Propco LLC |

i. The following Property is referred to herein as the "***Willowpark Property***", and Willowpark AID Propco LLC is referred to herein as "***Willowpark***".

| Property Name (Type) | Property Address | Property Owner/Defendant |
|---|---|---|
| Willowpark Place | 1706 Hoover Street, New Holstein, WI 53061 | Willowpark AID Propco LLC |

## FINDINGS IN SUPPORT OF ORDER

**A.    MCFA 54 Loan Documents**

1.      On or about December 19, 2014, the MCFA 54 Defendants executed that certain Multifamily Note (the "***First MCFA 54 Note***"), payable to the order of KeyBank National Association, a national banking association ("***KeyBank***"), in the original stated principal amount of $334,394,000.00 (the "First MCFA 54 Loan"). On or about October 31, 2016, the MCFA 54 Defendants executed that certain additional Multifamily Note (the "***Second MCFA 54 Note***"), payable to the order of KeyBank, in the original stated principal amount of $80,236,000.00 (the "***Second MCFA 54 Loan***"). The First MCFA 54 Note and Second MCFA 54 Note are referred to collectively herein as the "***MCFA 54 Notes***." Under the entire MCFA 54 Credit Facility, the original stated principal amount is $414,630,000.00 (the "***MCFA 54 Loans***"). The MCFA 54 Loans are further evidenced by that certain Master Credit Facility Agreement between the MCFA 54 Defendants and KeyBank dated as of December 19, 2014, along with all schedules, exhibits, and amendments thereto (the "***MCFA 54 Loan Agreement***").

2.      The MCFA 54 Notes are secured by, among other instruments, no fewer than fifty-four (54) individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement

and Fixture Filings, corresponding to each of the MCFA 54 Defendants and MCFA 54 Properties (the "*MCFA 54 Deeds of Trust*"), dated accordingly, executed by each of the MCFA 54 Defendants for the benefit of KeyBank.

3.      The MCFA 54 Deeds of Trust cover the real and personal property more particularly described therein and commonly known as per the Property Table located above. Non-defendant operating and management companies own the applicable licenses and operate and manage senior care and/or senior living facilities on each of the MCFA 54 Properties (the "*MCFA 54 Facilities*").

4.      The MCFA 54 Notes, MCFA 54 Deeds of Trust, and all other documents and instruments securing or evidencing the MCFA 54 Loans are hereinafter collectively referred to as the "*MCFA 54 Loan Documents*." Fannie Mae is the assignee of the MCFA 54 Loan Documents by way of, without limitation, those certain Assignment of Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings.

**B.      MCFA 25 Loan Documents**

5.      On or about June 28, 2017, the MCFA 25 Defendants executed that certain Multifamily Note (the "*MCFA 25 Note*"), payable to the order of KeyBank, in the original stated principal amount of $84,570,000.00 (the "*MCFA 25 Loan*"). The MCFA 25 Loan is further evidenced by that certain Master Credit Facility Agreement between the MCFA 25 Defendants and KeyBank dated as of June 28, 2017, along with all schedules, exhibits, and amendments thereto (the "*MCFA 25 Loan Agreement*").

6.      The MCFA 25 Note is secured by, among other instruments, no fewer than twenty-five (25) individual Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each of the MCFA 25 Defendants and MCFA 25

Properties (the "*MCFA 25 Deeds of Trust*"), dated accordingly, executed by each of the MCFA 25 Defendants for the benefit of KeyBank.

7.      The MCFA 25 Deeds of Trust cover the real and personal property more particularly described therein and commonly known as per the Property Table located above. Non-defendant operating and management companies own the applicable licenses and operate and manage senior care and/or senior living facilities on each of the MCFA 25 Properties (the "*MCFA 25 Facilities*").

8.      The MCFA 25 Note, MCFA 25 Deeds of Trust, and all other documents and instruments securing or evidencing the MCFA 25 Loan are hereinafter collectively referred to as the "*MCFA 25 Loan Documents*." Fannie Mae is the assignee of the MCFA 25 Loan Documents by way of, without limitation, those certain Assignment of Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filings.

## C.      MCFA 11 Loan Documents

9.      On or about December 22, 2016, the MCFA 11 Defendants executed that certain Multifamily Note (the "*MCFA 11 Note*"), payable to the order of KeyBank, in the original stated principal amount of $70,564,000.00 (the "*MCFA 11 Loan*"). The MCFA 11 Loan is further evidenced by that certain Master Credit Facility Agreement between the MCFA 11 Defendants and KeyBank dated as of December 22, 2016, along with all schedules, exhibits, and amendments thereto (the "*MCFA 11 Loan Agreement*").

10.     The MCFA 11 Note is secured by, among other instruments, no fewer than eleven (11) individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each of the MCFA 11 Defendants and MCFA 11 Properties (the

"*MCFA 11 Deeds of Trust*"), dated accordingly, executed by each of the MCFA 11 Defendants for the benefit of KeyBank.

11.     The MCFA 11 Deeds of Trust cover the real and personal property more particularly described therein and commonly known as per the Property Table located above. Non-defendant operating and management companies own the applicable licenses and operate and manage senior care and/or senior living facilities on each of the MCFA 11 Properties (the "*MCFA 11 Facilities*").

12.     The MCFA 11 Note, MCFA 11 Deeds of Trust, and all other documents and instruments securing or evidencing the MCFA 11 Loan are hereinafter collectively referred to as the "*MCFA 11 Loan Documents*." Fannie Mae is the assignee of the MCFA 11 Loan Documents by way of, without limitation, those certain Assignment of Multifamily Deed of Trust, Assignment of Rents and Security Agreement.

**D.     Hopkins Loan Documents**

13.     On or about December 18, 2020, Defendant Hopkins executed that certain Multifamily Note (the "*Hopkins Note*"), payable to the order of KeyBank, in the original stated principal amount of $2,784,000.00 (the "*Hopkins Loan*"). The Hopkins Loan is further evidenced by that certain Multifamily Loan and Security Agreement between Hopkins and KeyBank dated as of December 18, 2020 (the "*Hopkins Loan Agreement*").

14.     The Hopkins Note is secured by, among other instruments, a Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "*Hopkins Deed of Trust*"), dated as of December 18, 2020, executed by Hopkins for the benefit of KeyBank.

15.     The Hopkins Deed of Trust covers the real and personal property more particularly described therein and commonly known as Hopkins Place and located at 890 Camp Street, Sulphur

Springs, Texas 75482 (as fully defined in the Hopkins Deed of Trust, the "*Hopkins Property*").

Non-defendant operating and management companies own the license and operate and manage a

senior care and/or senior living facility on the Hopkins Property (the "*Hopkins Facility*").

16.     The Hopkins Note, Hopkins Deed of Trust, and all other documents and

instruments securing or evidencing the Hopkins Loan are hereinafter collectively referred to as the

"*Hopkins Loan Documents*." Fannie Mae is the assignee of the Hopkins Loan Documents by

way of, without limitation, that certain Assignment of Deed of Trust.

**E.     Westwood Loan Documents**

17.     On or about December 18, 2020, Defendant Westwood executed that certain

Multifamily Note (the "*Westwood Note*"), payable to the order of KeyBank, in the original stated

principal amount of $2,948,000.00 (the "*Westwood Loan*").   The Westwood Loan is further

evidenced by that certain Multifamily Loan and Security Agreement between Westwood and

KeyBank dated as of December 18, 2020 (the "*Westwood Loan Agreement*").

18.     The Westwood Note is secured by, among other instruments, a Multifamily

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the

"*Westwood Deed of Trust*"), dated as of December 18, 2020, executed by Westwood for the

benefit of KeyBank.

19.     The Westwood Deed of Trust covers the real and personal property more

particularly described therein and commonly known as Westwood Place and located at 37950

Airport Road, Woodsfield, Ohio 43793 (as fully defined in the Westwood Deed of Trust, the

"*Westwood Property*").   Non-defendant operating and management companies own the license

and operate and manage a senior care and/or senior living facility on the Westwood Property (the

"*Westwood Facility*").

20.     The Westwood Note, Westwood Deed of Trust, and all other documents and instruments securing or evidencing the Westwood Loan are hereinafter collectively referred to as the *"Westwood Loan Documents*." Fannie Mae is the assignee of the Westwood Loan Documents by way of, without limitation, that certain (i) Assignment of Mortgage, and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

**F.     Bluebonnet Loan Documents**

21.     On or about December 18, 2020, Defendant Bluebonnet executed that certain Multifamily Note (the *"Bluebonnet Note"*), payable to the order of KeyBank, in the original stated principal amount of $2,238,000.00 (the *"Bluebonnet Loan"*). The Bluebonnet Loan is further evidenced by that certain Multifamily Loan and Security Agreement between Bluebonnet and KeyBank dated as of December 18, 2020 (the *"Bluebonnet Loan Agreement"*).

22.     The Bluebonnet Note is secured by, among other instruments, a Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the *"Bluebonnet Deed of Trust"*), dated as of December 18, 2020, executed by Bluebonnet for the benefit of KeyBank.

23.     The Bluebonnet Deed of Trust covers the real and personal property more particularly described therein and commonly known as Bluebonnet Place and located at 3601 Victoria Avenue, College Station, Texas 77845 (as fully defined in the Bluebonnet Deed of Trust, the *"Bluebonnet Property"*). Non-defendant operating and management companies own the license and operate and manage a senior care and/or senior living facility on the Bluebonnet Property (the *"Bluebonnet Facility"*).

24.     The Bluebonnet Note, Bluebonnet Deed of Trust, and all other documents and instruments securing or evidencing the Bluebonnet Loan are hereinafter collectively referred to as

the "*Bluebonnet Loan Documents*." Fannie Mae is the assignee of the Bluebonnet Loan Documents by way of, without limitation, that certain (i) Assignment of Deed of Trust and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

**G.      Lucas Loan Documents**

25.     On or about December 18, 2020, Defendant Lucas executed that certain Multifamily Note (the "*Lucas Note*"), payable to the order of KeyBank, in the original stated principal amount of $4,372,000.00 (the "*Lucas Loan*"). The Lucas Loan is further evidenced by that certain Multifamily Loan and Security Agreement between Lucas and KeyBank dated as of December 18, 2020 (the "*Lucas Loan Agreement*").

26.     The Lucas Note is secured by, among other instruments, a Multifamily Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "*Lucas Deed of Trust*"), dated as of December 18, 2020, executed by Lucas for the benefit of KeyBank.

27.     The Lucas Deed of Trust covers the real and personal property more particularly described therein and commonly known as Lucas Place and located at 2910 Toccoa Road, Beaumont, Texas 77703 (as fully defined in the Lucas Deed of Trust, the "*Lucas Property*"). Non-defendant operating and management companies own the license and operate and manage a senior care and/or senior living facility on the Lucas Property (the "*Lucas Facility*").

28.     The Lucas Note, Lucas Deed of Trust, and all other documents and instruments securing or evidencing the Lucas Loan are hereinafter collectively referred to as the "*Lucas Loan Documents*." Fannie Mae is the assignee of the Lucas Loan Documents by way of, without limitation, that certain (i) Assignment of Deed of Trust and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

**H.      Willowpark Loan Documents**

29.     On or about December 18, 2020, Defendant Willowpark executed that certain Multifamily Note (the "*Willowpark Note*"), payable to the order of KeyBank, in the original stated principal amount of $2,126,000.00 (the "*Willowpark Loan*").   The Willowpark Loan is further evidenced by that certain Multiple Loan and Security Agreement between Willowpark and KeyBank dated as of December 18, 2020 (the "*Willowpark Loan Agreement*").

30.     The Willowpark Note is secured by, among other instruments, a Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "*Willowpark Deed of Trust*"), dated as of December 18, 2020, executed by Willowpark for the benefit of KeyBank.

31.     The Willowpark Deed of Trust covers the real and personal property more particularly described therein and commonly known as Willowpark Place and located at 1706 Hoover Street, New Holstein, Wisconsin 53061 (as fully defined in the Willowpark Deed of Trust, the "*Willowpark Property*").   Non-defendant operating and management companies own the license and operate and manage a senior care and/or senior living facility on the Willowpark Property (the "*Willowpark Facility*").

32.     The Willowpark Note, Willowpark Deed of Trust, and all other documents and instruments securing or evidencing the Willowpark Loan are hereinafter collectively referred to as the "*Willowpark Loan Documents*."   Fannie Mae is the assignee of the Willowpark Loan Documents by way of, without limitation, that certain (i) Assignment of Mortgage and (ii) an Assignment of Collateral Agreements and Other Loan Documents.

**I.     Bluegrass Loan Documents**

33.     On or about August 31, 2016, the Bluegrass Defendants executed that certain Multifamily Note (the "*First Bluegrass Note*"), payable to the order of Wells Fargo Bank,

National Association, a national banking association (*"Wells Fargo"*), in the original stated principal amount of $56,604,000.00 (the *"First Bluegrass Loan"*). On or about September 29, 2016, the Bluegrass Defendants executed that certain additional Multifamily Note (the "Second Bluegrass Note"), payable to the order of Wells Fargo, in the original stated principal amount of $42,622,000.00 (the *"Second Bluegrass Loan"*). On or about November 1, 2016, the Bluegrass Defendants executed that certain additional Multifamily Note (the *"Third Bluegrass Note"*), payable to the order of Wells Fargo, in the original stated principal amount of $40,333,000.00 (the *"Third Bluegrass Loan"*). The First Bluegrass Note, Second Bluegrass Note, and Third Bluegrass Note are referred to collectively herein as the *"Bluegrass Notes."* Thus, the original, principal amount under the Bluegrass Credit Facility totals $139,559,000.00 (the *"Bluegrass Loans"*). The Bluegrass Loans are further evidenced by that certain Master Credit Facility Agreement between the Bluegrass Defendants and Wells Fargo dated as of August 31, 2016, along with all schedules, exhibits, and amendments thereto (the *"Bluegrass Loan Agreement"*).

34. The Bluegrass Notes are secured by, among other instruments, no fewer than thirty (30)[1] individual Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings, corresponding to each[2] of the Bluegrass Defendants and Bluegrass Properties (the *"Bluegrass Deeds of Trust"*), dated accordingly, executed by each of the Bluegrass Defendants for the benefit of Wells Fargo.

35. The Bluegrass Deeds of Trust encumber the real and personal property more particularly described therein and commonly known as per the Property Table located above (as

---

[1] While there are thirty-one Bluegrass Defendants and only thirty security instruments, two of the Defendants—Abilene 1100 East BG Propco LLC and Abilene 1102 West BG Propco LLC—are borrowers on the same property.

[2] One security instrument covers the Abilene Place North and Abilene Place South Properties (located at 1100 N. Vine Street, Abilene, Kansas 67410).

fully defined in the Bluegrass Deeds of Trust, the "*Bluegrass Properties*"). Non-defendant operating and management companies own the applicable licenses and operate and manage senior care and/or senior living facilities on each of the Bluegrass Properties (the "*Bluegrass Facilities*").

36.  The Bluegrass Notes, Bluegrass Deeds of Trust, and all other documents and instruments securing or evidencing the Bluegrass Loans are hereinafter collectively referred to as the "*Bluegrass Loan Documents.*" Fannie Mae is the assignee of the Bluegrass Loan Documents by way of, without limitation, those certain Assignment of Multifamily Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filings. Thus, Fannie Mae is the owner and holder under the Bluegrass Loan Documents and the party entitled to enforce same.

**J.    Facts Relevant to All Loan Documents**

37.  The MCFA 54 Notes, MCFA 25 Note, MCFA 11 Note, Hopkins Note, Westwood Note, Bluebonnet Note, Lucas Note, Willowpark Note, and Bluegrass Notes are each a "*Note*" and collectively the "*Notes*."

38.  The MCFA 54 Loans, MCFA 25 Loan, MCFA 11 Loan, Hopkins Loan, Westwood Loan, Bluebonnet Loan, Lucas Loan, Willowpark Loan, and Bluegrass Loans are each a "*Loan*" and collectively the "*Loans*."

39.  The MCFA 54 Loan Agreement, MCFA 25 Loan Agreement, MCFA 11 Loan Agreement, Hopkins Loan Agreement, Westwood Loan Agreement, Bluebonnet Loan Agreement, Lucas Loan Agreement, Willowpark Loan Agreement, and Bluegrass Loan Agreement are each a "*Loan Agreement*" and collectively the "*Loan Agreements*."

40.  The MCFA Deeds of Trust, MCFA 25 Deeds of Trust, MCFA 11 Deeds of Trust, Hopkins Deed of Trust, Westwood Deed of Trust, Bluebonnet Deed of Trust, Lucas Deed of Trust,

Willowpark Deed of Trust, and Bluegrass Deeds of Trust are each a *"Deed of Trust"* and collectively the *"Deeds of Trust."*

41.     The MCFA 54 Loan Documents, MCFA 25 Loan Documents, MCFA 11 Loan Documents, Hopkins Loan Documents, Westwood Loan Documents, Bluebonnet Loan Documents, Lucas Loan Documents, Willowpark Loan Documents, and Bluegrass Loan Documents are collectively referred to herein as the *"Loan Documents."*

42.     The MCFA 54 Properties, MCFA 25 Properties, MCFA 11 Properties, Hopkins Property, Westwood Property, Bluebonnet Property, Lucas Property, Willowpark Property, and Bluegrass Properties are collectively referred to herein as the *"Properties."*

43.     The MCFA 54 Facilities, MCFA 25 Facilities, MCFA 11 Facilities, Hopkins Facility, Westwood Facility, Bluebonnet Facility, Lucas Facility, Willowpark Facility, and Bluegrass Facilities are collectively referred to herein as the *"Facilities."* Each Facility is operated by a nondefendant operating company (each, an *"Existing Operator"*) that holds the license for such Facility, except for (i) those Properties commonly known as Garnet Place (Garden City, ID), Heron Place (Nampa, ID) and Syringa Place (Twin Falls, ID), where Existing Manager (as hereafter defined) is the license holder, and (ii) Abilene Place North (Abilene, KS) and Abilene Place South (Abilene, KS), where the applicable Defendants, Existing Operators and Existing Manager are collectively the license holders, and is managed by a nondefendant management company (each, an *"Existing Manager"*) under a management agreement between such management company and the corresponding nondefendant operating company (the *"Current Management Agreements"*).

44.     KeyBank and Wells Fargo assigned, negotiated and transferred to Fannie Mae the Loan Documents regarding the Properties that secure the Notes, such that Fannie Mae is the current

owner and holder of the Notes and entitled to enforce the Notes and liens and security interests against Defendants as to the Properties. KeyBank is now the servicer of the MCFA 54 Loans, MCFA 25 Loan, MCFA 11 Loan, Hopkins Loan, Westwood Loan, Bluebonnet Loan, Lucas Loan, and Willowpark Loan. Wells Fargo is now the servicer of the Bluegrass Loans.

**K.      The Defendants' Obligations under the Loan Documents**

45.      The Defendants' obligations arising under the Loan Documents are secured by valid, binding, properly perfected first-priority liens on and security interests in the Properties and certain other collateral described more fully in the Deeds of Trust for each Property.

46.      Each Defendant has failed to pay certain amounts due under the Notes and is in default for failure to pay such amounts. As a result of each Defendant's failure to timely pay all amounts due and owing, an "Event of Default" exists under the Loan Documents as to each Defendant, and the indebtedness evidence by the Loan Documents has been accelerated. Each Defendant has been provided with actual notice of the Application. No further notice is required under the Loan Documents.

47.      Fannie Mae's liens extend to all Defendants' real and personal property of any kind that is owned by Defendants as described in the Loan Documents. For the avoidance of doubt, nothing herein grants Fannie Mae any lien not already provided by the Loan Documents.

48.      Each mortgage or deed of trust securing the Loan, as applicable, provides that upon the occurrence of, and during the continuance of any Event of Default: (i) Fannie Mae may enter into or upon each Property or any part thereof to take possession of each Property, either personally or through its agents; (ii) the applicable Defendant's right to collect rents shall automatically terminate and Fannie Mae shall without notice be entitled to all rents as they become due and payable, including rents then due and unpaid; and (iii) Fannie Mae may apply for the appointment

of a receiver for each Property. Each mortgage or deed of trust, as applicable, further provides that upon the occurrence of, and during the continuance of any Event of Default, should Fannie Mae apply for the appointment of a receiver, each Defendant has expressly consented to the appointment of a receiver.

49.     The Loan Documents provide that upon the occurrence of, and during the continuance of, any Event of Default, Fannie Mae may, among other things, (i) declare the unpaid debt to be immediately due and payable, and (ii) institute proceedings for the complete foreclosure of the mortgage or deed of trust, as applicable.

50.     Fannie Mae has valid claims against the Defendants, which claims are secured by the Properties. Due to the nature of each Property (which includes real property), and the requirement to provide advance notice to State regulators of a change of control of the operator holding the applicable licenses, it may take months to effectuate sales or foreclosures of the portions of the Properties constituting real property, during which time rents from the Properties (which are part of Fannie Mae's collateral) will be lost. Because those rents cannot be recovered after they are spent, foreclosure is an insufficient remedy, and Fannie Mae's rights will be frustrated and diminished in value unless a receiver is appointed. No less drastic equitable remedy is available. A receiver is therefore needed to take control of each Property and preserve the rents pending foreclosure of such Property.

## ORDER APPOINTING RECEIVER

In light of the Application and the facts in support the Application, it is therefore ORDERED, ADJUDGED, and DECREED that:

1.     **Appointment of Receiver.** Michael F. Flanagan of Kansas City, Missouri, who is not a party, attorney, or other person interested in this action, and otherwise qualified to serve as

receiver under applicable law, is appointed receiver of the Receivership Estate (as defined below) for all purposes (the "***Receiver***") with all of the powers and obligations set forth herein.

2. **Bond of Receiver.** The Receiver shall file with the Clerk of this Court a cash deposit or bond in the penal amount of amount of $10,000.00 (the "***Bond***")[3], on the Receiver's pledge in writing that he will discharge the duties of Receiver in this action and obey the orders of this Court. The filing of Receiver's Bond with this Court shall take place within ten (10) business days after the entry of this Order. This Order shall not be effective until the Bond is submitted and the Receiver's oath is filed. Once this Order is effective, Receiver shall take and keep possession, custody, and control of the Properties subject to the terms of this Order. The cost of the Receiver's Bond shall be an expense of the receivership estate, and the Receiver shall be entitled to be reimbursed for the costs associated with obtaining said Bond (including the cost of any premium for such Bond) from revenue generated from the Properties. The Bond shall be maintained in full force and effect during the course of the Receivership and continue until the Receiver files and obtains court approval for his final account and report, the expiration of any time periods to appeal the approval, or the resolution in favor of the Receiver of the appeal if one is filed. Upon filing the Bond and oath (which may be in the form of a declaration pursuant to 28 U.S. Code § 1746), the Receiver shall be vested with all the powers and responsibilities of a receiver as provided by law and as specifically set forth herein; provided, however, that the Receiver shall not be deemed to have commenced his responsibilities as receiver hereunder, including possession of the Receivership Estate (as defined below), until he has delivered a written notice by email to counsel

---

[3] In the event the Receiver is unable to promptly post a bond, he may, in the alternative, post a $10,000 cash deposit. Such deposit shall be deposited into the Registry of Court. Should the Receiver subsequently obtain a bond in the amount of $10,000, the Receiver shall file a notice of such bond with the Court, at which time the Clerk of Court shall promptly return the $10,000 cash deposit without further Court order, upon the Receiver producing a file-stamped copy of the notice of bond to the Clerk.

for the Parties declaring the date and time at which his oversight and control of the Defendants and possession of the Receivership Estate will begin (the "***Commencement Notice***").   Promptly following the delivery of the Commencement Notice, the Receiver is authorized, in coordination with the Existing Operators and the Existing Managers, to notify the residents of the Properties (as defined above) of the appointment of the Receiver.

3.      **The Receivership Estate.**  The Court shall have jurisdiction over the Receiver and over all tangible and intangible assets of each of the Defendants (collectively, the "***Receivership Estate***"), and all tangible and intangible assets used by Defendants or the Existing Operators for the operation of the Properties, including all real and personal property owned, leased or otherwise in the possession of the Defendants including the Properties and all offices owned, leased or occupied by the Defendants or the Existing Operators and/or the Existing Managers at the Properties, in each case, to the extent the Defendants have rights thereunder (together with the Properties, the "***Receivership Premises***"), all rents, funds, bank accounts, litigation claims, accounts receivable, computers, all media on which information is stored electronically, vehicles, equipment, inventory, furniture, furnishings, licenses, permits, books, records, and documents, but excluding any "Privileged Communications" as defined in paragraph 6.

4.      **Defendants', Existing Operators', and Existing Managers' Board of Directors**. The Defendants', Existing Operators' and Existing Managers' managers and boards of directors (the "***Boards***") shall remain in existence; provided, however, that the provisions of this sentence shall not apply once Existing Managers are no longer engaged by the Receiver or the Properties are no longer owned by the Defendants.  The Receiver or his representative shall timely notify Fannie Mae and the designated representative of each Defendant and each Defendant's Existing Manager as to material developments concerning the Receivership Estate and shall timely cause

to be provided any documents or information reasonably requested by the designated representative of the Existing Manager or the applicable Board upon written request.

     5.    **Receiver's Powers and Duties**. Immediately upon the later of the filing of the Receiver's oath and bond and delivery of the Commencement Notice, the Receiver shall, without further order of this Court unless specified, immediately have the following powers and legal responsibilities:

       a.  **The Receivership Estate.** The Receiver shall take physical custody and possession of the Receivership Estate subject to the terms of this Order. Notwithstanding the foregoing, the Receiver shall not exclude the Existing Managers, Existing Operators, or any related parties from being physically present at each Property unless and until the Receiver has obtained, with respect to such Property, an alternative operator or manager to take control of and operate such Property, in which case the Receiver shall replace the Existing Operator or Existing Manager, as applicable, subject to the terms of this Order. Defendants, the Existing Operators and Existing Managers agree to cooperate with the Receiver and Fannie Mae to achieve the mutual goals of a prompt, consensual transfer of the Properties, while minimizing the impact of the receivership on the management and operation of the Properties and its residents, and on Existing Manager to permit Existing Manager to maintain continuity of care for the residents of the Properties.

       b.  **Authorization to Enter New Agreements**. Promptly following the entry of this Order, to ensure sufficient revenue is made available for the operation and management of the Properties, and to protect continuity of care for Property residents, the Receiver is authorized to enter into one or more new Operations

Service Agreements (each, an "*OSA*") with an affiliate of MonticelloAM, LLC (each, such affiliate, an "*Interim Advisor*") to provide support for the operation of the Properties for and on behalf of the Receiver.  Concurrently with the entry into the OSAs, Receiver will direct Existing Operators to terminate the Current Management Agreements, and immediately thereafter, Receiver or his designees, including but not limited to MonticelloAM LLC or its affiliates, shall enter into new management agreements with Existing Managers and relating to the Facilities (the "*New Management Agreements*").

c.  **Management of Properties and Operations**.  The Receiver, by and through each of the Defendants, and subject to sufficient funds being made available to the Defendants, is authorized, empowered, and directed to direct and cause the Existing Operators and Existing Managers to: (1) continue to manage all of the ordinary-course operations of the Properties, subject to and consistent with the terms and conditions of the *New Management Agreements*, and (2) in accordance with the New Management Agreements and the Loan Documents, regularly provide to the Receiver updates and reports relating to management or operation of the Properties, and the Receiver shall provide to the designated representatives of the Existing Managers any and all documents or information relating to the management or operation of the Properties not contained in such regular updates or reports, in each case, within three (3) business days following written request. For purposes hereof, any action or expenditure by Existing Managers contemplated by a line item in the Budget (subject to any Variances) (as such capitalized terms are herein defined) shall be deemed to be in the ordinary course of business. The Receiver, by and

through each of the Defendants, is authorized, empowered, and directed to direct and cause the Existing Operators and Existing Managers to carry out any of the foregoing or any other action provided for under the New Management Agreements. The Receiver is hereby authorized to enter into new or amended agreements with the Defendants, the Existing Operators and/or the Existing Managers to ensure sufficient revenue is made available for the operation and management of the Properties, and/or to protect continuity of care for Property residents.

d. **Keys.** The Receiver shall have non-exclusive access to all keys, lock combinations, access cards and other means to access locked areas relating to the Receivership Premises, including all lockboxes and locked drawers and cabinets, except for keys and access cards in the possession of residents of the Properties. The Receiver is authorized to make copies of such keys, access cards, and other means to access locked areas relating to the Receivership Premises for his use in the administration of the Receivership Estate.

e. **Books and Records.** The Receiver shall have non-exclusive access to all non-Privileged Communications in the books and records of the Defendant related to the management and operation of the Properties, whether in hard copy or electronic form, including all financial records, tax returns, and any and all documents under the control of, or prepared by any third party on behalf of the Defendant (the "***Books and Records***"). The Receiver is authorized to make copies of such non-Privileged Communications in the Books and Records for his use in the administration of the Receivership Estate.

f.  **Bank Accounts.** The Receiver, in his sole discretion and after consultation with the applicable Existing Operator and Existing Manager, may continue to use the existing bank accounts of all Defendants and Existing Operators (the *"Existing Accounts"*) or, at his discretion, may open one or more new bank accounts (each, a *"Receiver Account"*) to be held and operated under the Receiver's control except as may be prohibited by applicable laws relating to Medicaid payments; provided, however, that Existing Operators, the Receiver, and the Defendants shall require the continued deposit of all of the Defendants' gross revenues into such accounts. Existing Operators and Existing Managers shall have access to any Receiver Account, subject to the terms of this Order. The Defendants and their agents and employees shall provide the Receiver with all information necessary for the Receiver to take control of each of the Defendant's bank accounts and to open and maintain the Receiver Account, including all login information necessary to access the Defendants' bank accounts through the website(s) of the bank(s) where such accounts are maintained. The Receiver and Existing Managers (acting in the ordinary course of business or otherwise only upon instruction of the Receiver), shall be the sole signatories on all of the Defendants' bank accounts.

g.  **Revenues.** The Receiver shall monitor cash management processes, including processing of payments and the preparation of financial reports. The Existing Managers and any New Manager, as applicable, in collaboration with the Receiver, are authorized to demand, collect, and receive all accounts receivable, monies, funds and payments related to the operations of the Properties, and shall ensure that all such amounts are received, collected, and recorded. All monies coming into the

possession of the Receiver and not reserved or expended for any purposes authorized hereunder shall be deposited in a Receiver Account.

h. **Shared Expenses.** In some cases, Defendants or Defendants' affiliates, including Existing Managers, may pay for expenses, such as insurance, that are spread across multiple properties, including properties that are not included in the Properties of this Receivership Estate. In such event, the Receivership Estate shall be liable only for that portion of such expenses that is allocable to a Property, and not for any portion of such expense allocable to any other property that is not part of the Receivership Estate. The Defendants are ordered to provide the Receiver with sufficient information to determine the correct allocation of any such expenses. Unless Fannie Mae otherwise consents in writing, the Receiver shall not be authorized to disburse any funds for, or pay any expenses of, any property or facility operations other than a Defendant-owned Property and the Facility operations associated with such Properties.

i. **Budget.** The budget for operations of the receivership is attached hereto as **Exhibit 1** (as may be amended or modified by future order of the Court, the "**Budget**") and shall govern the Receiver's operations for the first one hundred twenty (120) days of the receivership (unless a different time period is agreed to by the Receiver, Fannie Mae, and an applicable Existing Manager). The Receiver shall cause to be paid, on behalf of the Receivership Estate, all expenses necessary to operate the Properties, not to exceed the amounts permitted by the Budget and any Variances (as defined below). To the extent cash flow from the Properties is insufficient to pay such expenses, without further order of this Court, the Receiver is authorized,

on behalf of the Receivership Estate, to request funds from Fannie Mae pursuant to Section 5(*l*) of this Order as necessary to pay such amounts. Existing Managers and the Receiver shall be permitted to exceed the amounts set forth in the Budget to pay categories of expenses listed in the Budget to the extent that such payments would not cause the aggregate expenditures to exceed either (the following constituting "***Variances***") (x) 110% of the total budgeted expenses for that same period or (y) 120% of the amount budgeted for that same line item for that same period (each comparison period, a "***Measuring Period***") and *provided further, however*, that if the Receiver, in the exercise of his business judgment, determines that he must make expenditures in excess of the amounts as permitted by the Budget for purposes of resident life, health, or safety, the Receiver is authorized to do so and shall immediately notify Fannie Mae and Defendants. Following the entry of the Receivership Order, Existing Managers shall deliver to Fannie Mae and the Receiver on the 20th of each calendar month at a minimum (i) a budget-to-actual report comparing actual receipts and disbursements to the amounts budgeted in the preceding month and (ii) occupancy statistics.

j.  **Payment of Expenses and Use of Checks.** Subject to sufficient funds being made available, the Existing Managers shall pay the normal, ordinary, and necessary operating expenses of the Properties, in accordance with the Budget and subject to any Variances (except as otherwise expressly provided in this Order), from and to the extent of the rents and other revenues collected from the Properties. The Receiver shall pay any and all operating expenses of the Properties that are administrative expenses of the Receivership Estate. The Receiver is also authorized

to employ and pay the Existing Managers, property managers, property operators, accountants, and other persons and professionals as the Receiver deems appropriate to perform his and their duties without further order of this Court. Neither the Receivership Estate, the Receiver nor Fannie Mae shall be liable for any expense with regard to any Property that is incurred prior to the date of the Commencement Notice; *provided, however*, that each Existing Manager shall be entitled to pay, in the ordinary course of business, amounts accrued pre-receivership that include amounts which are within the normal billing cycles and as otherwise expressly set forth in the Budget. The Existing Managers and the Receiver are authorized to write checks and expend funds for the purpose of making any payments or distributions required or permitted to be made hereunder, including but not limited to expenses incurred in connection with the operation, preservation and maintenance of the Receivership Estate, bank service charges, insurance, accounting and other professional services, postage costs and courier and other delivery costs, inventory, office expenses, rent, security deposits, repairs, supplies, taxes, utilities, wages, and renewals of the Receiver's bond. For the avoidance of doubt, the Existing Managers shall write checks and expend funds to pay liabilities incurred in the ordinary-course operations of the Properties subject to the Budget and any Variances, availability of cash flow, and obligations imposed by federal, state or local statutes or regulations, or imposed by regulatory authorities, or, to the extent practical under the circumstances, only with the permission of the Receiver, except for emergencies resulting in life, health, or safety issues. The Receiver must

provide 48 hours' notice to Fannie Mae and Defendants prior to spending more than fifty thousand dollars ($50,000) for items outside the ordinary course of business.

k. **Insurance.**  Following the entry of this Order, the Defendants shall promptly (a) provide the Receiver with copies of all existing insurance policies for the Defendants, the Properties, and/or the assets of the Receivership Estate, and (b) name the Receiver as an additional insured on any existing insurance policies for the period that the Receiver shall be in possession of the Receivership Estate or direct the Existing Managers to do so.  The Receiver shall determine, following consultation with the Defendants and Fannie Mae, whether in the Receiver's judgment there is sufficient insurance coverage for the Receivership Estate or any part of it and whether such coverage complies with the Loan Documents.  If sufficient insurance coverage does not exist, the Receiver shall immediately notify the Parties and the Existing Managers, and the Receiver shall have sixty (60) days to procure sufficient insurance for the Receivership Estate.  The Receiver shall name himself as the insured and Fannie Mae as additional insured and as loss payee for any such policy he procures.  No insurer may cancel its existing policy as a result of the appointment of the Receiver without prior order of this Court.  No Defendant may cancel, reduce the limits of, or modify any insurance coverage currently in existence with respect to any Defendant or Property except as otherwise provided herein or when the Existing Manager is replaced by the New Manager.  For the avoidance of doubt, all insurance premiums, and all deductibles payable under the applicable insurance policies, shall be considered ordinary-course expenditures and payable from the Receivership Estate. Except as expressly set

forth in this Order, the Receivership Estate shall not be liable for any claims arising prior to entry of this Order.

l.  **Debt.**  The Parties acknowledge that some of the Properties currently operate, and are expected to continue to operate during this receivership, at a cash-flow deficit. Cash receipts from one Property shall not be commingled with cash receipts from any other Property. Without further order of this Court, the Receiver is authorized, on behalf of the Receivership Estate to borrow funds from Fannie Mae as necessary to perform his duties hereunder (including payment of amounts required to operate the Properties under the New Management Agreements) and to otherwise ensure sufficient funds to otherwise meet any and all obligations or requirements imposed by regulatory authorities (including legal counsel fees).  The Receiver is authorized to issue one or more Receiver's certificates of indebtedness (*"Certificates"*) to evidence such debt, and is authorized to execute such other documents as requested by Fannie Mae evidencing the advance of such funds (the *"Lending Documents"*). Any such funds advanced by Fannie Mae and evidenced by the issuance of Certificates shall be considered advances made under the Lending Documents between the Receiver and Fannie Mae and shall be added to the Indebtedness evidenced by the Loan Documents. The obligations under each Certificate shall be a super-priority administrative claim against the Receivership Estate, and shall be secured by a perfected first priority security interest in and lien on all of the Defendants' property, including all of the Defendants' existing and future acquired property interests of any nature whatsoever (including assets of the Receivership Estate), real and personal, tangible and intangible, including owned and leased real

property, any other interests in real property, accounts receivable, inventory, equipment, cash, deposit accounts, investment property, general intangibles, payment intangibles, supporting obligations, instruments, documents, chattel paper, commercial tort claims, insurance, licenses and permits, intellectual property, trade secrets, goodwill, machinery, contract rights and tax refunds, and all proceeds of the foregoing. Fannie Mae is authorized to take such actions and record such documents as it deems appropriate to reflect the granting and perfection of any such liens to secure obligations arising under the Lending Documents.

m. **Foreclosure of Assets of the Receivership Estate.** Without further order of this Court, Fannie Mae may cause to be foreclosed by judicial or non-judicial means any or all its interests in the Receivership Estate with such advance notice to the Defendants as is required by applicable law.

n. **Marketing and Sale of Assets of the Receivership Estate.** Without further order of this Court, and at the request of Fannie Mae, the Receiver is authorized to market any Property or Properties for sale or lease and to retain a real estate broker or other consultant for such purpose; provided, however, any final sale of a Property or Properties is subject to approval from Fannie Mae and this Court. Each Defendant hereby agrees to any sale that may be approved by Fannie Mae and waives any right to object to any such sale. In connection with the marketing, sale and management of any Property, the Receiver is authorized, but not directed, to retain real estate brokers or agents, surveyors, title companies, and conduct environmental assessments, take necessary environmental remedial measures and perform or have performed other engineering and studies without further order of this Court.

o. **Contracts.** Subject to the Receiver making funds available as described in this Order, Defendants will direct each Existing Manager and Existing Operator to continue to operate and perform under its respective New Management Agreements, as well as any contracts, leases or other agreements required to operate the Properties in the ordinary-course of business of each Property. The Existing Operators and the Existing Managers may negotiate, make, enter into, or modify contracts or agreements related to the ordinary-course operations of any Property and the Receivership Estate only with the prior approval of the Receiver. The Receiver may negotiate, make, enter into, or modify contracts or agreements of or related to matters outside the ordinary-course operations of any Property and the Receivership Estate, and may immediately terminate any existing contract, agreement, lease or instrument of the Defendants if the Receiver determines such agreement not to be beneficial to the Receivership Estate, *provided* that, the Receiver shall first consult with the applicable Existing Managers. The Existing Managers may terminate any contracts that are not useful in connection with the management and operation of the Properties with the approval of the Receiver. The Receiver shall not be bound by any contract between the Defendants and any third party that the Receiver does not expressly assume in writing. The Receiver is authorized to sign any and all documents on behalf of the Defendants consistent with the terms of this Order.

p. **Litigation.** The Receiver is authorized to initiate, defend, negotiate, settle or otherwise dispose of any claim that concerns property of the Receivership Estate.

q. **Mail.** Each Defendant shall take any and all steps necessary to retrieve, collect, and review all non-Privileged Communications in mail addressed to the Defendants, and is authorized to instruct the United States Postal Service to reroute, hold, or release such mail to the Existing Managers. Each Defendant shall cause to be provided to the Receiver photocopies of all non-Privileged Communications in mail addressed to the Defendants that may relate to the Receiver's duties established hereunder or to the Receivership Estate.

r. **Tax ID.** The Receiver is authorized to use any federal tax identification numbers of the Defendants to carry out his duties established hereunder.

s. **Licenses and Permits.** The Receiver is authorized to use the Defendants' or Existing Operators' Medicaid Provider numbers, which, for the avoidance of doubt, will remain with the applicable Defendant or Existing Operator. The Receiver is authorized to apply for, obtain, and pay any reasonable fees for any necessary license, permit or other governmental approval relating to the Properties, the Receivership Estate, or the operation of either of the foregoing (and all such expenses shall be considered ordinary-course expenditures payable from revenues generated from the Properties or as otherwise provided by Fannie Mae in accordance with this Order), and confirm the existence of, and do all things necessary to protect and maintain, any such licenses, permits or governmental approvals. Upon appointment, the Receiver shall provide written notice to all applicable regulatory authorities.

t. **Receiver's Professionals.** Subject to the express terms of this Order, the Receiver is authorized to employ legal counsel to assist him in the discharge of his duties

without the need for a Court order.  In addition, upon further order of this Court, the Receiver is authorized to retain such accountants, consultants, managers, brokers, appraisers and other professionals as are necessary to the proper discharge of the Receiver's duties, and to pay such professionals reasonable fees from the funds of the Receivership Estate in accordance with the Budget.  Notwithstanding the foregoing, the Receiver is authorized, without Court approval, to employ legal counsel to assist with any regulatory issues that may arise in connection with the Receivership Estate, with such legal fees not to exceed $100,000, absent further Court order.

u. **Improvements.**  Each Defendant, through its respective Existing Manager and the Receiver, as applicable, is authorized to make such capital expenditures necessary or desirable relating to the operations and maintenance of the Properties as set forth in the Budget with the consent of Fannie Mae or as required by applicable regulations.  The Receiver is authorized to make any alterations, renovations, repairs, improvements, or replacements of or to the Properties or the Receivership Estate that the Receiver deems necessary or otherwise required by the state regulator.

v. **Additional Powers.**  The Receiver is hereby vested with any and all authority necessary or appropriate, at law and in equity, to carry out the intent of this Order.

6.    **Cooperation by Defendants.**  The Defendants for themselves and their Existing Operators, as well as their respective agents, directors, officers, employees, attorneys, representatives, affiliates, all other persons and entities who are successors in interest to or are acting in concert with the foregoing, and all persons and entities with control, possession,

knowledge, or oversight of any of the Defendants' assets, including its Books and Records: (a) shall direct Existing Managers to cooperate with the Receiver and his professionals, representatives and their agents in connection with the Receiver's performance of his duties and the exercise of the authority granted to the Receiver herein (at no cost to Defendants, Existing Managers and such other related parties which are not paid out of the Receivership Estate); and (b) are hereby enjoined and restrained from interfering with the Receiver carrying out his duties under this Order and any further orders of the Court. Notwithstanding any provision of this Order, nothing contained in this Order shall provide the Receiver with any right of access to any Defendant's privileged information (including by way of example and not limitation, any email, document, and conversation) subject to the Attorney/Client evidentiary privilege or Attorney Work Product Doctrine (a "*Privileged Communication*"). Should the Receiver discover that he has received, accessed, or obtained a Privileged Communication, he shall advise counsel for the affected Defendant by email, identify the Privileged Communication, destroy any copies in his possession, and refrain from using any knowledge of the Privileged Communication in any manner or for any purpose. Nothing contained in this Order shall waive the Defendant's Attorney/Client evidentiary privilege, the Attorney Work Product Doctrine, nor any provision of the Health Insurance Portability and Accountability Act of 1996 ("*HIPAA*") or similar privacy laws. The Receiver shall not have access to any patient care information protected under HIPAA except as provided in this Order. In the event Court intervention is required to obtain the Defendants' compliance with the terms of this Order, and an order is entered against the Defendants, Defendants acknowledge and agree that they may be liable for reasonable attorneys' fees and expenses incurred by the Receiver or Fannie Mae, as applicable, in obtaining such compliance.

7.    **Cooperation by Banks.** Each institution where an Existing Account is maintained is hereby ordered, upon the Receiver's request and presentation of this Order and except as expressly prohibited by applicable laws or regulations, to allow the Receiver to take over such Existing Account, to transfer control to the Receiver of such Existing Account and any funds contained within it, and to provide the Receiver with account statements and other account documents for such Existing Account upon request. The Receiver is authorized to execute new signature cards for such accounts to ensure the transfer of control of such accounts to the Receiver. Upon the Receiver's request and presentation of this Order, each institution where an Existing Account is maintained is ordered to delete all current designated signatories on such accounts except for those signatories identified by the Receiver, which may include the Existing Managers.

8.    **Addresses for Notice.** The Parties shall promptly notify the Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in this action and their counsel, to the extent such information is available. The Parties shall give notice to the Receiver of any service of process affecting the Receivership Estate or any correspondence, notices, or other communications received on behalf of the Defendant.

9.    **Suit Against Receiver.** All Parties and persons acting through them are hereby restrained and enjoined, without the prior approval of this Court, from taking any of the following actions, except in this Court, unless otherwise provided herein or in a subsequent order of this Court, consistent with general principles of equity and in accordance with its ancillary equitable jurisdiction in this matter:

a.    Except as provided herein with respect to Fannie Mae's right to foreclose on the Properties, the commencement or continuation, including the issuance or employment of process, of any judicial, administrative, or other proceeding against

the Receiver or any Receiver-Related Person (as defined herein), or the Receivership Estate, arising from the subject matter of this proceeding;

b.  The enforcement against the Receiver, property of the Receivership Estate, or any Defendant of any judgment obtained before the date this proceeding was commenced;

c.  Any act to obtain possession of property of the Receivership Estate or property from the Receivership Estate or to exercise control over property of the Receivership Estate;

d.  Any act to create, perfect, or enforce any lien against property of the Receivership Estate, including against any Property;

e.  Any act to collect, assess, or recover a claim against the Receiver or the Receivership Estate that arose before the date this proceeding was commenced;

f.  The setoff of any debt owed by the Defendants or the Receivership Estate, or secured by assets of the Receivership Estate, against any claim against the Defendants or the Receivership Estate; and

g.  Any claim for acts arising prior to entry of this Order.

For the avoidance of doubt, nothing contained in this Order shall restrain or enjoin any party from seeking an order of this Court or of any appellate court of competent jurisdiction to obtain compliance by Fannie Mae, the Receiver, or any Receiver-Related Persons (as defined herein) with the terms of this Order.

10.  **No Personal Liability.** Michael F. Flanagan and Flanagan & Associates, LLC, through and by Michael F. Flanagan, is acting solely in its capacity as Receiver and, except as provided by applicable law, no risk, obligation, liability or expense incurred by the Receivership

Estate shall become the personal risk, obligation, liability, or expense of Mr. Flanagan or Flanagan & Associates LLC.

11.     **Security Deposits; Resident Contracts.**  All security and other deposits paid by any resident, tenant, or other person to any Defendant or its agent shall be turned over to the Receiver, with such funds to be used in accordance with the terms and conditions of the applicable resident contract.  Any other security or other deposit that any resident, tenant, or other person has paid or may pay to the Receiver, if otherwise refundable under the terms of a lease or other agreement with such resident, tenant, or other person, shall be an expense of the Receivership Estate and shall be refunded by the Receiver in accordance with the applicable lease or agreement.

12.     **Utilities.**   Without prior order of this Court, no utility company, including electricity, gas, water, sewage, waste water, recycling, garbage, telephone, television, cable and internet providers, may terminate service to any Defendant or to the Receivership Estate as a result of nonpayment of any obligation incurred prior to the date of the Commencement Notice, nor may any utility demand an additional deposit as a condition to the continued provision of service.

13.     **HIPAA.**   This Order constitutes a Protective Order under HIPAA.  The Receiver and the Receiver-Related Persons are authorized to access confidential patient information as necessary to carry out their duties under this Order; provided, however, that the Receiver and the Receiver-Related Persons shall implement the following procedures to safeguard the confidentiality of protected health information ("**_PHI_**"), as defined under HIPAA:

> a.  The Receiver and Receiver-Related Persons shall be prohibited from using or disclosing PHI for any purpose other than for purposes of fulfilling the Receiver's responsibilities under this Order. The Receiver and Receiver-Related Persons shall use only the minimum necessary confidential information for such purposes.

b. The Receiver and Receiver Representatives shall implement appropriate safeguards to prevent review, use, or disclosure of PHI, including subjecting the Receiver and Receiver Representatives to the same standards regarding confidentiality of patient records as Defendants under applicable laws, including HIPAA.

c. The Receiver and Receiver Representatives shall mitigate (to the extent reasonably practicable) any harmful effect that is known to them from a use or disclosure of PHI by them in violation of the requirements of this Order.

d. The Receiver and Receiver Representatives must not make any paper or electronic copies of, or otherwise acquire, any PHI in the course of their duties, such that it is not necessary for them to return or destroy PHI received at the end of all litigation.

e. Any other person that the Receiver retains, employs, or contracts, or that otherwise acts as an agent for the Receiver, shall abide by the same restrictions and conditions that apply to the Receiver with respect to PHI.

14. **Replacement of Existing Manager**.   The Receiver shall engage the Existing Managers to operate the Properties in accordance with the terms of this Order and the New Management Agreements, and the Receiver shall be permitted, but not directed, to retain one or more replacement management companies acceptable to Fannie Mae (each, a *"New Manager"*) for any Property, and contract with that New Manager on commercially reasonable terms without further order of this Court.   Any termination of a New Management Agreement shall be in accordance with the terms of such New Management Agreement.   Any such New Manager shall have the same rights and responsibilities under this order as an Existing Manager. Any New Manager is expressly authorized to occupy a Property pending licensure of a new operator.   Upon engagement of a New Manager, the Receiver shall confirm in writing to the applicable Defendant

and Existing Manager that the New Manager has been engaged to manage the Property. The Receiver shall consult and coordinate these communications with Defendants. The Parties agree to cooperate with each other to achieve the mutual goals of an efficient transfer of the Properties.

15.   **Replacement of Existing Operator**. The Receiver shall cooperate with Fannie Mae in locating and licensing any operator (each, a "*New Operator*") to replace any Existing Operator of any Property or a New Operator for each Property and the Receiver is authorized, as and when such new operators are secured and licensed with respect to each Property, to enter into and perform under any Operations Transition Agreement (an "*OTA*"), purchase and sale agreement, lease, or other agreement with each such New Operator or owner that the Receiver deems necessary or appropriate to ensure the uninterrupted care for residents at the subject Property and the orderly transfer of operations, subject to and in compliance with all applicable laws, rules and regulations relating to the transfer of operations for senior housing communities. Any such OTA, purchase and sale agreement, lease, or other agreement shall be in commercially reasonable form and substance acceptable to the applicable parties. The Receiver is authorized to pay any amounts owing pursuant to any such agreement. At a reasonable time prior to the appointment of a New Operator to replace any Existing Operator of any Property, the Receiver shall: (a) confirm in writing to the applicable Defendant and Existing Manager or New Manager, as applicable, that the New Operator has obtained all required licenses and permits needed to operate the Property under applicable law for the jurisdiction where the Property is located and provide the applicable Defendant, Existing Manager or any New Manager, as applicable, with copies of said licenses and permits; (b) execute an appropriate joint notice with the applicable Defendant, Existing Manager or New Manager required under applicable state law regarding the change in the controlling person over each Properties; (c) send the joint notice, along with a cover

letter explaining that the notice is an update pursuant to this Order and summarizing the anticipated change in the operator and/or controlling person of such Property, to each applicable state regulatory agency; and (d) either (i) terminate the New Management Agreement in accordance with Section 14 above, or (ii) provide evidence of New Operator's written agreement to assume all of Existing Operator's obligations under the New Management Agreement.

16.    **Filing of Copies**.  Within ten (10) days after entry of this Order, the Receiver shall, pursuant to 28 U.S.C. § 754, cause copies of Fannie Mae's Complaint and a copy of this Order to be filed in the federal district court for each district in which a Property is located.

17.    **Compliance with Applicable Laws**.  Upon taking charge of each Property as authorized by the immediately preceding paragraph, the Receiver shall comply with all applicable local, state and Federal regulations, including U.S. Department of Health and Human Services rules and regulations regarding the safety of residents.

18.    **Contact with Regulatory Authorities**.  The Receiver is authorized and directed to coordinate with Defendants to contact any regulatory authority responsible for a Property and to provide a copy of this Order.  The Receiver is authorized to file documents with applicable regulatory authorities and pay all necessary fees.  The Receiver is authorized to hire and retain professionals, including legal counsel, necessary to assist with such filings without further order of this Court.

19.    **Retention of Possession**.  Subject to the limitations expressly provided in this Order, the Receiver shall retain possession of each Property until the earlier of (i) further order of this Court, (ii) the disposition of such Property by the Receiver, or (iii) disposition of the Property by sale or by judicial or nonjudicial foreclosure by Fannie Mae, with the express understanding that any such judicial or nonjudicial foreclosure may proceed without further order of the Court.

20.    **Receiver Compensation**.   The Receiver shall be paid a monthly fee equal to $1,000.00 per month per Property, plus reimbursement of all out of pocket fees, costs and expenses incurred in discharging Receiver's duties hereunder.  All fees, together with allowed out of pocket fees, costs and expenses, approved in this paragraph are to be paid as a priority from the rents and revenues of each Property.

21.    **Existing Manager Cooperation**.   Each Defendant shall, either directly or through its Existing Operator, direct its Existing Manager to continue to provide all services required under each New Management Agreement or applicable licensing or regulatory requirements to operate and manage its Property under applicable law and shall cooperate with the Receiver in performing these services, and in the orderly transition to any New Operator or New Manager, and shall execute promptly all applications, assignments, consents, and documents requested by the Receiver to facilitate such transition; provided that, in all cases, appropriate funds are provided to the Existing Managers to carry out such obligations.  The Receiver is further authorized to compensate any such Existing Manager in accordance with the provisions of any New Management Agreement.  Upon successful transition of a Property to a New Manager, the Receiver shall cause to be terminated the New Management Agreement corresponding to such Property upon thirty (30) days' notice, unless the Parties agree otherwise, and the Existing Managers and their affiliates shall immediately be relieved and released from their obligations to operate and/or manage such Property.

22.    **Accounting of Rents**.   No later than the 25th day of each month, for each Property for so long as it is in the Receivership Estate, the Receiver shall make an accounting of all rents and revenues collected and all expenses paid for the previous month and file such accounting with the Court and shall serve upon Fannie Mae's counsel and Defendants' counsel a copy of said

accounting. The Receiver shall file a final report within ninety (90) days after the termination of the receivership unless otherwise ordered by the Court.

23. **Payment to of Indebtedness**. Within ninety (90) days after the termination of the receivership, the Receiver shall pay to Fannie Mae all receipts remaining, if any, after payment of the items set forth herein, to be applied to the indebtedness of the Defendants to Fannie Mae, pursuant to the Notes. The Receiver is authorized, but not required, to make any or all of the payments set forth in this paragraph during the pendency of the receivership.

24. **Repairs**. In the event the Receiver desires to make any repair to any Property or pay any unforeseen operating expenses other than those ordinarily and normally incurred in the operation of the business or which are required to address life safety concerns, the Receiver shall notify Fannie Mae, directly or through counsel, of the nature and approximate cost of the desired expenditure. Fannie Mae shall respond within three (3) business days of such notice to either authorize such expenditure or to join with the Receiver in a request for a hearing before the Court to determine whether such expenditure should be authorized. The provisions of this paragraph do not apply to emergency repairs, life safety repairs, or repairs required by applicable city, municipal, or state ordinance or code or as directed by federal, state or local regulatory authorities.

25. **No Impairment**. Fannie Mae's title to and security interest in the rents, issues, profits, and revenues of each and every Property shall not be impaired by the appointment of the Receiver.

26. **Liability:**

    a. Except as provided otherwise in this Order, neither Fannie Mae nor the Receiver shall be liable for any obligations incurred by or on behalf of any Defendant, Existing Operator, Existing Manager, New Manager, New Operator, or other

property operator, whether or not such obligations have been liquidated and whether or not such obligations are conditional, that arose prior to this Order and that relate in any way to the acquisition, ownership, maintenance, operation, financing, sale, or use of the any of the Properties and of any part of it. If obligated, Defendants shall remain liable for all obligations of the Properties.

b.  This Order shall not impose upon either Fannie Mae or the Receiver any liability to any party for any claim, action, or cause of action relating to any Property and arising out of or relating to events or circumstances occurring prior to the appointment of the Receiver, including any liability resulting from the performance of services rendered by third parties on behalf of Defendants, and any liability to which Defendants are currently or may ultimately be exposed under any applicable laws pertaining to the ownership, management, and operations of any of the Properties.

c.  To the extent the Receiver continues the services of any current employee, agent, or other person with respect to any Property, the Receiver shall not be liable for any claims of any nature whatsoever of such employee, agent, or other person that arose prior to the date and time of the entry of this Order, including any liability related to unemployment or worker's compensation claims, claims or violations related to Employee Retirement Income Security Act of 1974, or any other claims relating to employee benefits or employee benefits plan.

d.  Except for acts of willful misconduct, gross negligence, or fraud, neither the Receiver nor any of his employees, agents, representatives, attorneys, officers, directors, partners, shareholders, members, affiliates, successors or assigns (the

"***Receiver-Related Persons***") shall have any liability for any loss or damage incurred by the Receivership Estate, any Defendant, any Defendant's clients, patients or associates, or any of their respective subsidiaries, affiliates, officers, directors, agents, employees, or equity holders because of any act performed or not performed by the Receiver or any Receiver-Related Person in connection with the discharge of the Receiver's duties and responsibilities hereunder. Further, there shall be no claims brought by any party arising out of related to the appointment of the Receiver.

27.    **Not Deemed Owners**.  Neither the Receiver nor Fannie Mae shall be deemed in any way to be an owner or operator of any Property or any agent of any Defendant, owner, or operator of any Property.  Except for claims arising from the Receiver's willful misconduct, gross negligence, or fraud, the Receiver shall have no liability as to any claim, action, or cause of action of any third party who has or would have claims against any Defendant or any officer, director, or shareholder thereof (including any claims under any federal or state environmental laws).

28.    **Further Instructions**.  The Receiver or any party may, upon 72 hours' notice to each other (or, in the case of an extreme emergency, on 24-hours' notice), petition the Court for instructions in furtherance of this Order and any further orders the Court may make with respect to the Receivership Estate.

29.    **Inventory**.  Within thirty (30) days of the date of this Order and with the assistance of the Existing Managers, the Receiver shall file an inventory of all assets of the Receivership Estate, including all real property, tangible personal property and intangible personal property, but excluding the personal property of any residents of the Property.

30.     Fannie Mae agrees that notwithstanding anything contained in the Loan Documents to the contrary, neither Defendants nor any of the Guarantors (as defined in the applicable Loan Documents) shall have any liability to Fannie Mae under any Loan Documents (including, but not limited to, with respect to Guarantors, each Guaranty of Non-Recourse Obligations (as defined in the applicable Loan Agreements) and with respect to Guarantors and Defendants, each Environmental Indemnity Agreement (as defined in the applicable Loan Agreements), for any sums, claims, amounts, obligations or liabilities (collectively, **"Claims"**) to the extent such Claims are solely attributable to the acts, directions, or omissions of the Receiver from and after the date this Order is entered, all such Claims being waived.  Except as expressly provided herein, nothing in this Order is intended to modify the obligations of any party under any Loan Document.

31.     Money coming into the possession of the Receiver and not expended for any of the purposes authorized herein shall be held by the Receiver subject to such orders as this Court may hereafter issue.

32.     The Receiver shall not be responsible for the preparation and filing of any tax returns for Defendants or any affiliate(s) of Defendants or any Existing Operator, Existing Manager, New Operator, or New Manager, including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns.  Upon reasonable request, the Receiver shall provide the Defendants or their affiliates with information in the Receiver's possession that may be necessary for the Defendants or their affiliate to prepare and file their tax returns. Notwithstanding the above, the Receiver shall be responsible for the preparation and filing of any tax returns required for the Receivership Estate but not the Defendants.

33.     The Receiver may at any time request from the Court that they be exonerated, discharged and released from his appointment as Receiver.

34.     No lien, claim, or other security interest in any Property shall be affected by this Order, nor shall the appointment of the Receiver impair Fannie Mae's right or ability to proceed with any judicial or nonjudicial foreclosure of any Property now posted or instituted or hereafter posted or instituted by Fannie Mae, with the express understanding that judicial or nonjudicial foreclosure of any Property may occur without further order of the Court in accordance with applicable state law.

35.     This Court shall retain exclusive jurisdiction and supervision of all matters concerning the Receiver, the receivership created hereby, the interpretation and implementation of this Order and the Properties.

36.     This receivership shall continue in effect until further order of this Court.

SIGNED: March 30, 2023

The Honorable Jia M. Cobb
U.S. District Court Judge

AGREED AS TO FORM AND SUBSTANCE BY:

**REED SMITH LLP**

By: */s/ Daniel Z. Herbst*
Daniel Z. Herbst
D.D.C. Bar No. 501161
1301 K Street, N.W.
Suite 1000, East Tower
Washington, DC 20005-3317
T: 202-414-9232
dherbst@reedsmith.com

*and*

Keith M. Aurzada (*pro hac to be filed*)
Texas Bar No. 24009880
Michael P. Cooley (*pro hac to be filed*)
Texas Bar No. 24034388
Jay L. Krystinik (*pro hac to be filed*)
Texas Bar No. 24041279
**REED SMITH LLP**
2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
T: 469-680-4200
F: 469-680-4299
kaurzada@reedsmith.com
mpcooley@reedsmith.com
jkrystinik@reedsmith.com

*Attorneys for Fannie Mae*

**Fannie Mae**

By: _____

Name: Roy E. Miller

Title: Assistant Vice President

**KIRKLAND & ELLIS LLP**

By: */s/ Mary Elizabeth Miller*
Mary Elizabeth Miller
D.D.C. Bar No. 252694
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
T: 202-389-3277
mary.miller@kirkland.com

*and*

Andrew D. Small (*pro hac to be filed*)
Illinois Attorney Registration No. 6201951
Leena Chopra (*pro hac to be filed*)
Illinois Attorney Registration No. 6312542
**Kirkland & Ellis LLP**
300 N. LaSalle
Chicago, IL 60654
T: 312-862-5489
F: 312.862.2200
andrew.small@kirkland.com
leena.chopra@kirkland.com

*Attorneys for Defendants*

**On behalf of the MCFA 54 Defendants, MCFA 11 Defendants, MCFA 25 Defendants, HOPKINS AID PROPCO LLC, WESTWOOD LANDING AID PROPCO LLC, BLUEBONNET AID PROPCO LLC, LUCAS AID PROPCO LLC, and WILLOWPARK AID PROPCO LLC**

By: _____

Name: Dan Guill

Title: Authorized Signatory

**On behalf of the Bluegrass Defendants**

By: _____

Name: Matthew Coleman

Title: Authorized Signatory

# EXHIBIT 1

## ENLIVANT PORTFOLIO - PROJECTED RECEIVERSHIP BUDGET[1]

|  | 4-Month Total |
|---|---:|
| **Revenue[2]** |  |
| Portfolio Revenue | 88,530,826 |
|  |  |
| **Expenses[2]** |  |
| Portfolio Operating Expenses | 74,163,692 |
|  |  |
| **Net Operating Income** |  |
| Net Operating Income | 14,367,134 |
| *Pre Mgmt Fee Margin* | *16.23%* |
|  |  |
| **Management Fee** |  |
| Total Management Fee | 12,500,000 |
|  |  |
| **Capex[3]** |  |
| Total Capex | 3,300,000 |
| *Per Unit* | *26,400* |
|  |  |
| **Other Expenses** |  |
| Onboarding Fee | 5,090,336 |
| Property Level Retention Cost | 1,750,000 |
| Other Costs | 2,000,000 |
| Receivership Fees | *500,000* |
| Receivership Legal | *200,000* |
| Total Other Expenses | 9,540,336 |
|  |  |
| **Portfolio Net Cash Flow[4]** |  |
| **Total Portfolio Property Net Cash Flow** | $ (10,973,202) |

(1) Projected budget subject to change following any property dispositions during receivership period
(2) Based on Borrower/Manager provided financials, for the trailing twelve month period as of 12/31/22
(3) Based on Borrower/Manager provided budget for fiscal year 2023
(4) Includes property level expenses only